**NOT FOR PUBLICATION**

## In the

## United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12060

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

LEONARD BROWN,
a.k.a. Bo,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:99-cr-00125-KMM-1

_____

Before LUCK, LAGOA, and HULL, Circuit Judges.

PER CURIAM:

Leonard Brown appeals the district court's denial of his letter request for appointment of counsel to represent him

regarding the First Step Act.  The district court construed Brown's letter as a motion for a sentence reduction under the First Step Act, and denied the construed motion, concluding he was ineligible for a sentence reduction.  Brown filed a motion for reconsideration, which the district court also denied.

After careful review, we conclude that the district court erred by (1) construing Brown's letter as a motion for a sentence reduction and denying his so construed motion without first allowing Brown to make arguments in favor of a sentence reduction and (2) finding that Brown was "ineligible" for a sentence reduction.  For these reasons, we vacate the district court's orders and remand for the district court to allow Brown to brief his construed motion for a sentence reduction, allow the government to respond, and then consider Brown's construed motion for a sentence reduction.

## I.  BACKGROUND

### A.    Brown's 2000 Convictions and Sentences

In 1999, a grand jury issued a superseding indictment against Brown and several codefendants.  Brown was charged with four drug crimes: (1) conspiracy to possess and distribute more than 5 kilograms of cocaine and more than 50 grams of cocaine base ("crack cocaine"), under 21 U.S.C. § 841(a)(1) (Count 2); (2) conspiracy to import more than 5 kilograms of cocaine under 21 U.S.C. §§ 952(a) and 963 (Count 3); (3) distribution of more than 500 grams of cocaine and more than 50 grams of crack cocaine, under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 9); and

(4) conspiracy to use and possess a firearm related to drug trafficking, under 21 U.S.C. § 846 and 18 U.S.C. § 924(o) (Count 16).

In March 2000, a jury found Brown guilty of all four drug crimes. Back in 2000, the jury made no findings about drug type or quantity.

A probation officer prepared a presentence investigation report ("PSI") that grouped Counts 2, 3, 9, and 16 together and calculated Brown's base offense level as 43 because his offense conduct involved first-degree murder, pursuant to U.S.S.G. §§ 2D1.1(d)(1) and 2A1.1(a). The PSI reported that Brown, along with other defendants, committed several murders to further the drug conspiracy. The PSI stated that Brown's drug convictions in Counts 2, 3, and 9 had a mandatory minimum of 10 years' imprisonment and a mandatory maximum of life imprisonment, and Count 16 had no mandatory minimum and a mandatory maximum of 20 years' imprisonment. Brown did not object to the PSI.

Back in 2000, Brown's guidelines sentence term was life imprisonment,[1] and the district court sentenced Brown to life imprisonment for Counts 2, 3, and 9, and to 240 months'

---

[1] Brown was sentenced prior to *United States v. Booker*, 543 U.S. 220 (2005), which "rendered the Sentencing Guidelines advisory." *United States v. Massey*, 443 F.3d 814, 818 (11th Cir. 2006).

imprisonment for Count 16, all to run concurrently.  This Court affirmed his convictions and sentences on direct appeal.

## B.    Brown's Letter to the District Court

In 2019, Brown sent the district court a *pro se* letter that reads, in its entirety:

> I want to know how do the courts go about appointing attorneys for the Fair Sentencing Act?  I was charged with 50 grams of crack and qualify.  Do I write the Public Defenders office or do you get me a [sic] attorney assigned?  Thank you.

He also sent a second letter asking the Clerk of Court how to obtain appointment of counsel.

The district court entered a paperless order directing the government to respond to Brown's letter, which the court characterized as a motion to appoint counsel.  The district court also instructed the government to address whether Brown's sentence should be reduced under the First Step Act.

## C.    Government's Response

The government responded that Brown was ineligible for relief under the First Step Act.  It also argued that, even if Brown were eligible, the district court should not reduce Brown's sentence because his offense conduct resulted in the deaths of multiple individuals.   It argued that Brown lacked any statutory or constitutional right to appointment of counsel and Brown did not

provide any reasons to justify discretionary appointment of counsel.

The Federal Public Defender's office requested that the district court appoint it to represent Brown. It argued that Brown was indigent and that he explicitly requested and was eligible for appointment of counsel. It submitted that it could not properly advise Brown whether he was eligible for relief under the First Step Act without access to his complete file. It explained that after appointment, it could confer with Brown and reply to the government.

## D.    District Court's 2019 Order

On August 7, 2019, the district court entered an order in which it, for the first time and without explanation, construed Brown's letter as a motion to reduce his sentence under the First Step Act. The district court denied the construed motion, finding that Brown was ineligible for a sentence reduction.

The district court noted that Brown's PSI, adopted at sentencing, held Brown responsible for the shooting deaths of three co-conspirators. The district court reasoned that under the First Step Act, Brown's offense level of 43 and advisory guidelines sentence of life imprisonment would remain the same because of the murder cross-reference required by U.S.S.G. § 2A1.1. The district court explained that "[e]ven if the First Step Act somehow acts to lower [Brown]'s initial base offense level for the Counts involving [crack cocaine], § 2A1.1 would nonetheless raise any reduced base level up to 43, resulting in the same guideline[s]

range." The district court did not provide any other reasons for denying a sentence reduction.

It denied as moot both Brown's request for appointment of counsel, and the Federal Public Defender's request.

### E.    Brown's 2019 Motion for Reconsideration

After the district court ruled, Brown filed a *pro se* "motion for reconsideration of court's August 7, 2019[] order . . . and motion for imposition of a reduced sentence under the First Step Act." (Capitalization modified.) He pointed out that the district court improperly construed his *pro se* letter inquiring about counsel as a motion for a sentence reduction and asked the district court to consider this new motion as his first motion for a sentence reduction.

Brown argued that the district court erred in finding that he was ineligible for a sentence reduction because his "crack cocaine" convictions in Counts 2 and 9 are both covered offenses under the First Step Act. He contended that his eligibility for a sentence reduction did not turn on whether his advisory guidelines range would change, but only on whether he was convicted of a covered offense. He asked the district court to reduce his sentence in light of all relevant factors, including the 18 U.S.C. § 3553(a) factors. He also repeated his request for appointment of counsel.

### F.    Brown's 2024 Inquiry

In 2024, Brown filed a notice of inquiry, requesting a status update on his 2019 motion to reconsider. In a paperless order, the

district court denied his motion to reconsider because "nothing" in Brown's motion changed his ineligibility for a First Step Act reduction "because of the application of the murder cross-reference under § 2A1.1, which automatically raises [Brown]'s offense level to 43."[2]

Brown appealed, challenging the district court's denials of his construed motion to reduce his sentence under the First Step Act and his motion for reconsideration of that denial.

**G.    Arguments on Appeal**

Brown, now with the assistance of retained counsel, argues that the district court "abused its discretion and violated due process" by construing his *pro se* letter to the district court as a motion for a sentence reduction without warning, explanation, or an opportunity for Brown to argue for a reduction. He further contends that the district court erred by finding that he was ineligible for a sentence reduction based on what would be his new advisory guidelines range under the First Step Act. He contends that the district court repeated its errors by denying his motion for reconsideration.

Brown asks the Court to reverse and remand, so that after briefing the district court may review anew the merits of his motion for a sentence reduction. He also asks us to remand his case before a different district court judge because of the district

---

[2] The paperless order also denied Brown's motion for compassionate release and a motion to seal records, which he does not challenge on appeal.

court's "pattern of refusing to . . . engage with or consider [his] requests."

The government concedes that the district court erred when it determined that Brown was ineligible for a sentence reduction under the First Step Act. That is because Brown has some covered offenses. The government submits the district court should not exercise its discretion to reduce Brown sentence. But it agrees that we should remand this case for the district court to consider in the first instance whether a sentence reduction is appropriate. However, the government argues that reassignment to a different district court judge is not necessary or appropriate.

## II.    STANDARD OF REVIEW

"We review *de novo* questions of statutory interpretation and whether a district court had the authority to modify a term of imprisonment." *United States v. Jackson*, 58 F.4th 1331, 1335 (11th Cir. 2023) (quoting *United States v. Jones*, 962 F.3d 1290, 1296 (11th Cir. 2020), *vacated by Lavell Jackson v. United States*, 143 S. Ct. 72 (2022), *reinstated by Jackson*, 58 F.4th at 1333). "We review for an abuse of discretion the denial of an eligible movant's request for a reduced sentence under the First Step Act." *Id.* Likewise, we review for abuse of discretion the denial of a motion for reconsideration. *United States v. Llewlyn*, 879 F.3d 1291, 1294 (11th Cir. 2018).

## III. DISCUSSION

### A.    The First Step Act

A district court has no inherent authority to modify a defendant's sentence and may do so "only when authorized by a statute or rule." *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015); *see* 18 U.S.C. § 3582(c)(1)(B) ("[T]he [sentencing] court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure . . . .").

The First Step Act expressly authorizes, but does not require, district courts to impose reduced sentences for defendants convicted of certain crack cocaine offenses "as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *See* First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 ("First Step Act"); *see United States v. Edwards*, 997 F.3d 1115, 1118-19 (11th Cir. 2021) ("By its plain terms, § 404(b) independently vests district courts with the authority to reduce sentences under the circumstances described in the statute.").

Sections 2 and 3 of the Fair Sentencing Act, in turn, reduced the sentencing disparity between crack and powder cocaine. Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372 (2010) ("Fair Sentencing Act"); *see Dorsey v. United States*, 567 U.S. 260, 268-69 (2012) (detailing the history that led to the enactment of the Fair Sentencing Act). Relevant here, section 2 of the Fair Sentencing Act increased the threshold quantities of crack

cocaine necessary to trigger the statutory penalties set forth in 21 U.S.C. § 841(b)(1)(A), from 50 grams to 280 grams.  Fair Sentencing Act § 2(a)(1); 21 U.S.C. § 841(b)(1)(A).    Whereas before, a defendant, like Brown, guilty of an offense involving 50 grams or more of crack cocaine was subject to a mandatory sentence of 10 years to life imprisonment, after the Fair Sentencing Act, that defendant would instead face a sentence between 5 and 40 years' imprisonment.  21 U.S.C. § 841(b)(1)(A), (B); *Terry v. United States*, 593 U.S. 486, 493-94 (2021).

The First Step Act in effect made sections 2 and 3 of the Fair Sentencing Act retroactive.  *See* First Step Act § 404.  "To be eligible for a reduction under § 404(b) [of the First Step Act], a movant's offense of conviction must have been a 'covered offense,' meaning a crack-cocaine offense that triggered the enhanced statutory penalties set forth in § 841(b)(1)(A)(iii) or (B)(iii)."  *United States v. Russell*, 994 F.3d 1230, 1236-37 (11th Cir. 2021).  Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . , that was committed before August 3, 2010."  First Step Act § 404(a).  "To determine whether the offense of conviction is a covered offense, a district court should consult the record, including the movant's charging document, the jury verdict or guilty plea, the sentencing record, and the final judgment."  *Russell*, 994 F.3d at 1237.

## B.    *Pro Se* Litigants and Due Process

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (*per curiam*). Accordingly, a district court may look beyond the label of a *pro se* filing and recharacterize it to "create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis." *Castro v. United States*, 540 U.S. 375, 381-82 (2003). However, the district court should not recharacterize a filing where there is a risk that the *pro se* litigant "will be harmed rather than assisted by the court's intervention." *Russell*, 994 F.3d at 1242 (Branch, J., concurring) (quoting *Castro*, 540 U.S. at 386 (Scalia, J., concurring)).

This Court has expressed "serious concerns" about a district court's decision to recharacterize a letter requesting counsel to assist with a motion for a sentence reduction as a substantive motion for a sentence reduction. *Id.* at 1240 n.9. When the letter "neither requested a sentence reduction nor advanced any argument about why [the defendant] should receive a sentence reduction, correspondence between the letter and the district court's treatment of it as a motion for a sentence reduction is lacking." *Id.*

Before ruling on a motion, a district court "must accord the parties fair notice and an opportunity to present their positions." *United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) (quoting *Day v. McDonough*, 547 U.S. 198, 210 (2006)). "[T]he complete

denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error." *Id.* (quotation marks omitted).

In *Smith*, a *pro se* defendant wrote a letter to the district court "asking whether he was eligible for a sentence reduction under the First Step Act, and requesting the appointment of counsel to file a motion under the Act." *Smith*, 30 F.4th at 1336. The letter contained no substantive arguments about eligibility or arguments supporting a reduction. *Id.* Without briefing from the parties, the district court construed Smith's letter as a motion for a sentence reduction and denied it on eligibility grounds. *Id.*

Smith then filed a counseled motion for reconsideration, arguing that he was eligible for a reduction but without addressing whether a sentence reduction was warranted. *Id.* at 1336, 1338. The government responded to the issue of eligibility and addressed whether a sentence reduction was warranted. *Id.* Smith sought leave to reply to argue why a reduction was warranted. *Id.* at 1336. The district court denied the motion for reconsideration, as well as Smith's motion for leave to file a reply. *Id.* at 1336-37. We held that "[t]he district court should not have . . . denied the construed motion for a sentence reduction under the First Step Act without giving [the movant] the opportunity to present his factual and legal arguments in support of relief." *Id.* at 1338-39.

Even if a *pro se* litigant is eventually able to present his full argument in a motion for reconsideration, that may not "cure the district court's initial error of recharacterizing his letter." *Russell*,

994 F.3d at 1243 n.4 (Branch, J., concurring). This is in part because "the grounds for granting a motion for reconsideration are limited" and justified only by "extraordinary circumstances." *Id.*

## C.    Analysis

Here, first, we have "serious concerns" about the district court's decision to construe Brown's *pro se* letter inquiring about appointment of counsel as a motion for a sentence reduction. *See Russell*, 994 F.3d at 1240 n.9. Generally, courts may recharacterize a *pro se* filing to create a better match between the substance of his claim and its legal basis. *Id.* Brown's letter, however, did not "request[] a sentence reduction . . . nor advance[] any argument about why he should receive a sentence reduction." *Id.* Instead, the letter merely sought appointment of counsel to help him file such a motion. Thus, there was little correlation between the letter and the district court's recharacterization of it. *See id.*

Even if the district court's recharacterization of Brown's letter were permissible, the district court reversibly erred by failing to give Brown "fair notice and an opportunity to present [his] position[]" before it denied the construed motion. *See Smith*, 30 F.4th at 1338. This was a "complete denial of the opportunity to be heard on [] material issue[s]" and thus was "a violation of due process." *See id.* (quotation marks omitted).

The district court had a chance to fix its error when Brown moved for reconsideration and asked the district court to treat his reconsideration motion as his first motion for a First Step Act sentence reduction. But rather than addressing Brown's

substantive arguments for the first time, the district court treated Brown's motion as a motion for reconsideration. Because the threshold for granting reconsideration is higher than the standard for addressing a motion in the first instance, we cannot say that Brown had a fair opportunity to present his arguments. *See Smith*, 30 F.4th at 1338; *Russell*, 994 F.3d at 1243 n.4 (Branch, J., concurring). Thus, the district court deprived Brown of due process, and this error alone would require reversal. *See Smith*, 30 F.4th at 1338.

The district court also erred by finding that Brown was "ineligible" for a sentence reduction. Whether a defendant is eligible for a sentence reduction under § 404(b) of the First Step Act depends on whether the defendant was convicted for a covered offense. *Russell*, 994 F.3d at 1236-37. Brown's "crack cocaine" convictions on Counts 2 and 9 were for covered offenses because both convictions triggered penalties under § 841(b)(1)(A), which was modified by section 2 of the Fair Sentencing Act. *See* First Step Act § 404(a); Fair Sentencing Act § 2(a)(1). Thus, as the government concedes, Brown was eligible for a sentence reduction under the First Step Act. *See Russell*, 994 F.3d at 1236-37.

Therefore, we remand this case for the district court to consider in the first instance whether to reduce Brown's life sentence. We express no opinion on whether a sentence reduction is appropriate in Brown's case.

### D.    Reassignment to a Different District Court Judge

Brown asks us to reassign this case to a different district court judge on remand. "We have the authority to order reassignment of a criminal case to another district judge as part of our supervisory authority over the district courts in this Circuit." *United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir. 1989) (per curiam). "Reassignment is an extraordinary order, and we do not order it lightly." *United States v. Gupta*, 572 F.3d 878, 891 (11th Cir. 2009) (quotation marks omitted and alteration adopted).

> Where there is no indication of actual bias, we consider at least three factors to determine whether to reassign a case: (1) whether the original judge would have difficulty putting his previous views and findings aside; (2) whether assignment is appropriate to preserve the appearance of justice; (3) whether reassignment would entail waste and duplication out of proportion to gains realized from reassignment.

*Id.* (quotation marks omitted and alteration adopted).

Here, the factors do not warrant the "extraordinary" remedy of reassigning the case to a different district court judge on remand. *See id.* We have no reason to doubt that the district court will put aside its previous findings and, after full briefing by the parties, fairly address the merits of Brown's motion for a sentence reduction.

16                  Opinion of the Court                  24-12060

### IV.    CONCLUSION

For the above reasons, we **VACATE** the district court's orders and **REMAND** for the district court to consider anew Brown's motion for a sentence reduction.

**VACATED and REMANDED.**